Good morning. We're here for the in-bank argument in Big Lagoon Rancheria v. State of California. Council ready? You may proceed. May it please the Court, Peter Coffman, Deputy Attorney General for the State of California. I'd like to reserve 10 minutes of my time for rebuttal. The fundamental issue in this case is when and by what process the State should challenge the Secretary of the Interior's authority to impose Class III gaming procedures on the State, where the State has presented the Court with substantial evidence that the Secretary lacks the authority to do so. The significance of this issue is that if the Secretary cannot provide Big Lagoon with the ultimate relief in an able proceeding, then Big Lagoon's case should be dismissed. The District Court ruled that the challenge should come in a different lawsuit filed after the Secretary of the Interior made a decision on whether to adopt such procedures. The State's position is that any such challenge should come prior to any ruling on the merits in a bad faith negotiation lawsuit, because such a challenge constitutes a compulsory cost complaint, which if successful, would require dismissal of Big Lagoon's case. Did you file a motion to file a proposal? No, we did not, Your Honor. We asked for a Rule 56. Did you plan to raise this particular matter in the District Court? So there's not permanent dissent? Well, no, because we would need to bring – we believe that we would ultimately need to bring a challenge against the federal government, against the Secretary of the Interior. What we were looking – pardon me? Yes, we were seeking discovery for the basis for the federal government's decision to take the land in trust and to recognize – put Big Lagoon on the list of federally recognized – But you can't do that without the permission or the participation of the Bureau of Indian Affairs, can you, the Secretary of the Interior? No, the next step – the State takes the position that it is not going to initiate proceedings against the United States until it is sure that it has a solid basis for this. You're challenging the validity of the assertion that these are Indian lands. You can't do that without the authority, can you, under Rule 19? Well, there are – in our brief in opposition to the en banc, we pointed to two Ninth Circuit cases which say that where this – where an Indian tribe is bringing a suit to protect its beneficial interest in trust land in the United States is not necessarily a party. But we – you know, that was a possible outcome, but we felt that the better outcome in the case was to complete discovery for the possibility of a compulsory – of a cross-complaint, which we believe would be compulsory against the United States. So what we were seeking with our Rule 56d motion was the opportunity to complete discovery, to develop sufficient facts, to enable us to feel secure that it would be appropriate for us to file what we view as a compulsory cross-complaint. I thought 56d was limited to discovery necessary to respond to the summary judgment. It's not general discovery. I thought its purpose was to say, oh, look, we have a summary judgment motion. We need to do more discovery to respond to that. Isn't that – Well, that would be – I think – I believe a cross-complaint, the outcome of a cross-complaint would provide a defense to – it'll get a summary judgment motion because the issue then would be the validity of the – How would you get discovery for purposes of determining whether to file a cross-complaint? It's not general discovery. It's just discovery. They raised certain things in their motion. You say – and sometimes you say, well, we need further discovery to respond to the summary judgment motion. Well, in our view, Your Honor, we saw it as discovery that would enable us to bring – to be able to file a cross-complaint. The cross-complaint – Did you say that to the district judge? Did you say in your motion, did you say we want discovery for purposes of determining whether to bring a cross-complaint? I don't know if it was in those words. We say we need a discovery – If you don't know, don't say it. I mean, are you making this stuff up as you go along for the past 12 years? I don't believe so, Your Honor. The point – our point – It's a knowable fact in the record. You either did or you didn't. If you don't know, that's – Just go over there and get the record and look it up. Do you have a copy of the excerpts from here? Yes, we do. Okay. Just take it and check it out. I mean, the question is – the answer is either a yes, no, or I don't know, or if you want to reserve the answer for when you take rebuttal to give you a chance to look it up, or if you want to have your co-counsel look it up, that's fine. But I don't want guesswork. It doesn't do me any good. Well, if we can, then, Your Honor, because I – so that we can proceed with the argument, I will handle it in rebuttal. I just have one more question. Okay. The district court found that Ms. Gates hadn't been diligent in conducting this discovery. What's your response to that? Well, the district court didn't – that wasn't a basis for the district court's denial of our Rule 5016 motion. That wasn't a basis. She denied the motion to say it for the purpose of seeking additional discoveries from the United States. So I'd like to know the answer to the question, please. What is your response to that? I'm sorry, which – It's the same question. What is your response to the ruling that your client had not been diligent in conducting this discovery? Well, that wasn't a ruling on the Rule 5016 motion, Your Honor. That was a ruling on an earlier request for – to state the time for the summary judgment motions. And the court found that – did say that we should have initiated discovery earlier. And your response is? And our response was that – my response to that is that it was not relevant with respect to the district court's ruling on the Rule 56D motion. The court did not find – did not deny the motion on the basis that we had not been diligent in either initiating or completing discovery. That was a motion that – the comment that the court made was with respect to a completely different motion. The Rule 56D motion was a separate motion, and the court just bypassed the question of discovery or any issues related to discovery because the court found that it was irrelevant whether the status of the land and the status of the tribe were irrelevant for purposes of a good faith negotiation lawsuit. Well, I don't think that's correct. The district court said that it is meaningful to you that the – that it is currently land that is held at trust. And the – the paper by Thoreau was not related to the assertion that it was someone who wasn't taking the land. So why haven't you been correct that those are two completely separate inquiries on this record? Well, Vigilgoon – I can analogize to – for want of a better analogy of a football game. The – Vigilgoon has – I have no idea about football, so this should be one. I do. Okay, I'll read it. The issue – the issue really is Vigilgoon had – because they were on the list of federally recognized tribes and because the 11 acres was in trust, had the ability to initiate a bad faith lawsuit. But the ultimate question is you – they were in the lawsuit, but it was impossible – it would be impossible for them to get any recovery in the lawsuit if the Secretary of the Interior lacked the authority to impose class beginning procedures on the state. So the point – our point is that that issue, because it affects the ability of Vigilgoon to proceed with its lawsuit – I mean, you were negotiating. You did not take the position, if I understand it correctly, that you were not negotiating or were not negotiating sufficiently because this is not an interview or a passing issue. That was not the output of the issue, was it? No. During the – So I think that's what led the district court to think to me that there are two different things. When you negotiate, you negotiate on the instruction that you have to or that at least you have to go in a narrow way and then maybe challenge later whether you have to. Well, it is – there are two separate issues. The issue of the negotiations themselves and whether they were conducted in good faith, and then the separate issue of whether the group – the Indian group that is requesting negotiations and conducting them has the ability to obtain ultimate relief. But when you began the negotiations, maybe I'm making a different – having a different thought than what the district court described it as. When the state began the negotiations, it did not take the position at that time that it didn't have to because this is an unauthorized piece of land. And having not taken that position at the outset, why isn't that issue forfeited or waived in some way regardless of whether the statute of limitations might apply? No, Your Honor, because the – this is an issue of standing, the right to relief in their complaint. And that issue can be raised at any time. Why is it just a form of a claim? I mean, the Supreme Court recently has been chastising circuit courts for calling everything jurisdiction and standing when sometimes it's just a form of a claim. Why is it that simply it's something that has to be proved and the current status is something that has to be shown by evidence? I don't think standing is that. I mean, I don't – I'm not familiar with the Supreme Court case. But the question is whether this is an unauthorized piece of land. Isn't that just a fact that has to be demonstrated in this court's jurisdiction? Well, they may – the state relied on the representations of the tribe as to its status. And we relied on the fact that the land had been taken from the trust to initiate negotiations. We didn't say that. We knew when there was an appeal from the area director of the United States of the quiet plan of action to try to get the land out from under trust. California appears to have this. You specifically challenged the very thing you're talking about. And now you're saying that you're going to say that the tribe has been murdered. We knew perfectly well that you denied the fact that the land was held at trust, and we did not. But 1998 is still later on. Now you're coming back to me being collateral to that. But how can we – how can we appreciate what the state says about the trust land being held in trust? This is something that we relied upon the tribe. And it's very surprising. You were involved in litigation in 1990. Your Honor, the basis for our amicus in that case was the return fraudulent misrepresentation about the notice for the purpose for which the land was being taken into trust. So the argument wasn't that the United States at that time did not – the Cartier decision had not yet come down. Our argument was not that. And, again, we were not a party to that proceeding, so we're not bound by the outcome. We are – We weren't a party to that. But the reality is we knew perfectly well that the issue of whether the land was held in trust was a battle from the beginning. That was a neighbor of the tribe's, too. That was based on the project I like. It's a little different here. That was all decided. California made a big point about this whole thing. And then I just wondered, did it appeal to them? Was it a party to do anything? And all these years later, after dealing with the tribe, apparently in a very nonchalant way, you could get this report found basically. You didn't want to go. So there was a bad faith negotiation. In theory, this was something that was a bad faith negotiation, yes. And yet, here we are. And I think the collateral impact is – I mean, this is something that's surprising. Well, you know, I don't think this is a collateral attack. It's not a cross-claim, is it? What is it? Well, we – One of the things you have to deal with is whether or not whatever you call it is part of a six-year statute of limitations. That's correct. But the statute, the Wind River case and cases in the D.C. Circuit make it very clear that the suit is not against – it's not against the 1994 determination to take the land in trust. And it's not directly against the 1979 determination to put the group on the list of federally recognized tribes. It's on the Secretary of Interior's decision to impose Class III gaming procedures on the state on the basis of those decisions. So the challenge in the issue is not what – When did that happen? Again – You said 79. You said it's not 79. I understand the not. You said it's not 94 when the government, the United States, took the land in trust. And then you said it is when the Interior did this. But you didn't attach a date to it. And without a date, we can't add six and figure out whether this is within the statute of limitations. All right. So give me a date. Okay. This is – Just a date. Just a number. I can't give you – Just a date. Agree. I agree, Your Honor, that – I'm not asking you to agree or disagree. I want a number from you. It hasn't – the statute hasn't run yet, as the United States pointed out. Well, let me decide that by subtracting or adding six to whatever number you give me. And it's just arithmetic. So it's not 79. It's not 94. It is – Just a number. Just a date. Just a year. I don't need anything else. It is the date upon which the Secretary of Interior makes a new decision. Well, what date was that? I mean, it sounds – tell me a date. All right. That gets to my point, Your Honor. Just give me a date. I can't give you a date because – May I ask you this question? What's going on here? What's behind this lawsuit? Can you tell us that? What's the hidden agenda? I think it's pretty obvious, but I want to see if your eyes are open. What is it? Your Honor, we negotiated with Detroit prior to the Cartier decision, relying on the fact that the – The Barstow deal? Pardon me? The Barstow deal? We did that, Your Honor. We attempted to negotiate. We attempted to settle the settlement. What happened to that? It failed because it was not ratified by the California legislature. A lobbyist got in on it, right? Is that what happened? For whatever reason. Well, tell me. You know. I mean, you're Sacramento. That's what happened. So – I can only tell you that it never got out of committee in the legislature. The surmise is that tribes that face competition from Casino and Barstow lobbied heavily against it. I mean, aren't the real issues here the vital issues, environmental issues? Isn't that what they are? Environmental issues have been driving the state's position with respect to the casino. This is a 24-7 urban use immediately adjacent to the state ecological reserve, adjacent to state recreation area and parks, which are designed as dark sky environments. So the state in its negotiations with the tribes always tried to find a way to deal with that problem. What changed is after all of our efforts, when the Cartier decision came down, we started to take a look at the actual history of the tribe and what we had thought was true turned out not to be true. This was a new legal theory, if you're not mistaken. Which is entirely plausible because you have a Supreme Court case that said, oh, wow, this might apply to our case, but that's not enough, is it? I mean, that is not a triggering event for the statute of limitations. Otherwise, every time the Supreme Court comes down with a decision, we'd have to go and undo and reconsider all these trust acquisitions going back to 1911 or something, right? You agree with me, right? The Supreme Court decision is not enough of a triggering event to restart the statute of limitations. No, Your Honor. No, you don't agree with me? I'd say it's not enough by itself, no. Okay, so what is it? What is the triggering event? I mean, you said not by 79, not by 94. You're going to describe it for me. You don't want to give me a date, but okay, go ahead and describe it in words. It's the reason why I phrased my opening statement the way I did. I don't remember. Okay, I'll rephrase it. Okay. There's a choice. The district court made a choice about when a challenge to the ultimate secretarial decision in these kinds of proceedings would occur. And the rule on compulsory cross-complaints, the rule that tries to avoid a multiplicity of suits... Let's assume that you're right, counsel, that you don't have a statute of limitations problem. I think there are issues there, but let's assume there's no statute of limitations problem, and that the district court needed to bring the United States in as its indispensable or necessary party. Why didn't you do it, by the way? Was it the strategic position and oversight of a State Department? Your Honor, I would like to answer your question, but I note that I only have nine minutes and 32 seconds left. I want to make sure I don't lose my rebuttal. I just want to know why you didn't do it, by the way, if you thought that you had a vehicle to which to bring the United States in as an indispensable party, so that it's not a collateral challenge on their customary position without the United States as a party. All right. As I said earlier, before the United States... I mean, before the State generally would bring the United States in as a party, it wants to be sure of its facts. That's what we were attempting to do. We hadn't brought the complaint at that point or earlier. We were still seeking to make sure of our facts and not to go off half-cocked. Well, of course. But that goes back to your question. This report found that the State was not diligent in searching for evidence on the CIA, but it seemed to me that this wasn't something that was brought up until the litigation was underway and all of a sudden this new feeling came up and I wanted to confirm with you that that was, in fact, the case. It was an oversight, do you think? No. There are various reasons for where we were in the discovery process and when it was initiated, but I just need to reiterate that that wasn't a basis for the court's ruling. The court did not say, did not find that I'm denying your Rule 56 of the e-motion because you were not diligent. She just took it out of that category and ruled, denied the motion on a completely different basis. What was the basis for the suit against the United States? Right. And that's what I'm getting to now. The United States, in its amicus brief here, cited the court to Golden Hill-Powell-Gossett tribe, our Indians versus Waikare. And in that case, the court stayed proceedings to make a request of the United States, of the Department of the Secretary of the Interior, of the Department of the Interior, to provide the court with information about its position. Do you not have any freedom to make that claim? No. You're citing an APA claim, a title action claim? Under the Department of the Interior's rules, the party can make a request for action by the department, by the appropriate official within the Department of the Interior. That would have been the petition, which is the permission of the APA, which is filed directly with the Department of the Interior. If you're trying to bring it to court, you're going to have to find a way of restocking immunity, and that's going to have to be an action enacted by Congress. So what action, what statutory vehicle were you likely to have brought to the court? It would have been an APA proceeding. Our point was we would follow the process that's independent. So what would be the agency action that you would have followed? So the agency action would be an action on our request for a determination by the Secretary of the Interior that he would be authorized to approve Class III gaming procedures. So you would have gone through the final petition with the Department of the Interior, and if you lost that, then you would have filed an APA action on the Secretary of the Interior's action? That was one way of proceeding. The other way of proceeding is the way I believe that occurred. That can be a very cumbersome, very time-consuming thing. It doesn't seem to have much to do with the law. Well, it can be, except that's where we get the juxtaposition. You could have done those independently. You didn't do the discovery for that. You could do it today. You could have done it two years ago. Well, again, we're not going to – You can petition the Secretary for determination at any time.  Anyway, finish the answer to Judge Breyer. There are two ways to do it. If we were to initiate the administrative process, exhaust our administrative remedies, and seek to get a determination out of the Secretary of the Interior and act on that, and I'm referring specifically to the process in 25 CFR 2.8, that would take time. But the question is, do you have time on hand when the Secretary of the Interior adopts procedures? That would be an APA decision. We could challenge the Secretary of the Interior's action to approve Class III gaming procedures on the grounds that he was relying on the 11-acre trust decision and on the 1979 list act. Are you confident that that would be a vehicle for challenging the Secretary's decision to approve gaming? The decision to approve gaming may have other things, sort of, unreliable. Say that you have an Indian tribe, and the Indian tribe seems to be built on Indian land. But if those decisions have previously been made by the Secretary of the Interior, how would your decision to approve Class III gaming give you the right to challenge a different decision made at a different time in a different decade? Because the decision to approve those procedures is necessarily dependent on the validity of those earlier decisions. Now, this brings us back to my earlier question about the statute of limitations. I'm not sure you've answered the Chief Judge's inquiry about what the date you're relying upon to start a six-year extension. Well, the reason I can't answer his question... It's a future date for you right now. It is a future date. And six years from whenever you decide to file a petition with the Secretary of the Interior, and he denies your petition, and you file an APA claim. That's right. We can... That's Route 2, but he said you're not following Route 2 right now, you're following Route 1. I'm still waiting for Route 1. And what's the triggering date for that? Well, Route 1 would be to follow the process that the district court suggested, which was reach the bad faith determination, and it goes to the Secretary to determine whether to approve procedures. The Secretary, in order to make that decision, is going to have to find a tribe that has eligible Indian lands, and that is a federally recognized tribe. A necessity is then going to have to rely on its prior determinations. Under Wind River and the D.C. Circuit cases that we've cited, we are entitled to challenge the validity of the basis upon which the Secretary of the Interior is acting. Isn't the tribe already on the list? Well, the tribe is on the list. The question is, was it placed on the list properly? If the Secretary of the Interior, in approving class 3 gaming procedures, is going to rely on that decision to put the tribe on the list, then it becomes fair game. Under Wind River and... Back when it went on the list in 1994, or up to 1998, when they were in the trial process within the Department of the Interior, you were involved, you knew about this issue, and you did nothing. In the Wind River case, the 9th Circuit decision specifically refers to the D.C. Circuit case... In that case, the agency was enforcing its own rules. We don't have that there. Yes, in this case. If you're talking about the state of California, you claim that you have some right to challenge whether the land is properly held to trust. That's the very issue for the agency, the academy, and the field. You knew all about this, you participated in this attempt. If you really believed that, then why would not the state of California have promptly initiated the very actions you just discussed with Judge Feinberg? There would have been no issue about the statute of limitations. We've had plenty of times in the past where we've said, after all that, if we trust, I can just settle it. Then you go to the negotiation process, and many times, the maker of the case says, well, I'm not going to do this anymore, let's just deny it and then we'll challenge it. Now, the horse is out of the barn. Well, Your Honor, in a case cited in the Wind River case, the D.C. Circuit case, the individual, that's a pension case, the individual knew 30 years earlier what the interpretation of the pension rules were. Elected, was perfectly aware of it. The court found that he was perfectly aware of the ruling and said he was barred from attacking that decision. But 30 years later, he was allowed to challenge the subsequent determination not to award him his full pension on the basis of that ruling and then was allowed to attack the validity of that earlier interpretation. The court recognized it did not require him, did not hold it against him that he had knowledge of the earlier decisions. He didn't challenge him, so he wasn't bound by the outcome of that determination. You said when it's applied. That's when the statute runs. And the problem we have here is if our challenge to the Secretary's determination is considered. Thank you. Okay. We'll hear from the other side. Are you splitting time? Yes, Your Honor. We're splitting time evenly with the United States. Okay. Watch the clock. That's your total right there. Will indeed, Your Honor. May it please the Court, my name is Michael Pollard and I represent the Big Lagoon Rancheria. This case comes before the Court after the District Court entered judgment and found the State of California to be in bad faith on two grounds. Surprisingly, neither of those grounds are substantively at issue here because they've been conceded on appeal. So we are here with a bad faith finding from the District Court. Instead, the State seized on the Supreme Court's 2009 United States Supreme Court ruling in Carcieri to use the Indian Gaming Regulatory Act as an improper attack on the 1994 land and to trust decision of the Department of Interior. Any attack on that land and to trust decision is barred by the Statute of Limitations. It was barred by the Statute of Limitations. What did the Statute of Limitations say? The Statute of Limitations began to run at a crude on June 29, 1994, the day that the Area Director formally accepted title to the tract and land from the Rancheria. So the statute would have expired then six years later. Was that the time when they tried to ask for the land to be taken from the Trill Mountain? That was in response to that. And then there was a high BIA challenge brought by a neighboring association in which the State of California attempted to intervene too late and so was allowed to file amicus briefs. How would the State have known this? You picked the 1994 date. Was this in the Federal Register? Was this noticed in the Federal Register? I just want to know. They are consulted beforehand and... I'm sorry? They are consulted beforehand and... The United States consulted with the State of California. With bodies. They have to assess the impact. Do you tell me that? I assume this is in the record somewhere? Or is this just your personal knowledge? That's how it's typically done. Well, actually, let's maintain what's in this record. So you pick the date. You select the date. That's the date the United States acquires the land in trust. In order for that to be a valid triggering event, the State would have to have notice of it. One way to get notice, the way it happens with regulations, is it's published in the Federal Register. And then everybody in the world, at least everybody in America, has notice. Was this published? I don't think it's in the record that this was published in the Federal Register. I don't think that's... That's a fact of which we can take judicial notice. I don't know whether these trust acquisitions are published in the Federal Register. I don't know that that... We don't know that they are. So they don't have notice of that. So what is the first date on which we know that California has notice? Well, we know for sure... As far as the record is concerned. We know for sure that in the statute of limitations proceedings, they appeared. And we have... We know that they... By the way, in their March 1997, they seek to intervene in the IBIA proceeding. Okay. And that results in the 1998 IBA decision. So that means they must have had notice because they seek to intervene. Well, their papers in that case, and this is in the request for judicial notice, Exhibit 4, said that on that date it resulted in a transfer to the tribe of all local and all state regulatory control over development of the property. They also say in request for judicial notice, Exhibit 4 there, that that acquisition impeded the state's ability to regulate the impacts of gambling casino. So not only is it knowledge of the impacts on the state, but its impacts with respect to gaming. Counsel, you heard Mr. Kaufman say that the issue wasn't raised in the intervention which they made. I think it's the one that you're talking about right now. What's your response? The documents that we were compelled to file as a request for judicial notice on this re-hearing overwhelmingly demonstrate the inaccuracy of that statement. The state repeatedly in those documents references knowledge that the land-at-trust decision was adverse to general state interests, that it was adverse, that it impacted gaming. And, in fact, in request for judicial notice, Exhibit 2, in the governor's application to intervene, the paper said that the governor is directly affected by the action which threatens to remove land from state regulation by the California Coastal Commission, the State Regional Water Quality Control Board, the Department of Fish and Game, the State Department of Parks and Recreation. So it identified specific agencies. So it's very clear in their own submissions that they knew of the impact. And any land-at-trust decision is going to affect taxation and regulatory issues. So let me ask you this. What does the tribe want? Your Honor, the tribe right now— How many members are there in the tribe? There's about 28 members. Twenty-eight members. All right. The tribe would like to achieve the promise of self-sufficiency that IGRA makes possible. And what would that take? They are, one, the district court has affirmed the bad thing. I should say this, bearing in mind that I think these environmental issues are pretty overwhelming. So what would it take for the tribe to be happy? It would take this court to affirm the judgment, and then we would go to the— No, I'm not talking about that. Actually, I'm trying to address your concern, Your Honor, because the compact was sent to the mediator. The mediator approved our compact, and then this case was stayed. We are one final step away. If this court affirms the judgment, we are one final step. And I'll describe that step for you. It's found at 25 U.S.T. One step away from what? Being allowed to gain and build a class for gain. Well, I mean, but you've got a lot of other steps after that. Well— You've got all these environmental issues, which I think are going to be overwhelming. No, we— Well, that's—you know, I'm not going to—I'm getting older, so I don't know if I'll be around when this thing's over with. But I don't think you're being realistic. Well, if I may just describe that final step. Yeah. It's found at 25 U.S.T., Section 2710D7B7. Once the mediator has approved the compact, it's to send it to the Secretary of the Interior. And that section provides that the Secretary of the Interior shall prescribe in consultation with the Indian tribe procedures which are consistent with the proposed compact selected by the mediator, provisions of a group, and the relevant provisions of the laws of the state. One question on the back of the council. The environmental regulations that were supported by the state were not among the provisions that were accepted by the mediator. That's correct? Correct. So basically, as far as I'm concerned, if we affirm the decision of the district board, and in fact we also affirm the decision of the mediator, there are no environmental provisions included in the existing laws. There's some voluntary ones on the tribe. Voluntary, but not the ones of the state. So the fact is that by not being involved in this earlier, and leaving this to the last minute, however serious the environmental measures are, there is little remedy of any left for the state on this action to address that problem without a fair statement. I would say that the Secretary will prescribe those procedures. I don't think there's much of a good-faith challenge to that the state could make. But the state could. The state probably could, and on this record, probably will challenge that as an action applied to it. But that will not call into question the land and to trust action. We're almost at the end. There is nothing in there to address the environmental. The voluntary provisions. And remember, we live there. Nobody's more aware of the sensitivity. The Secretary is unlikely to basically raise her own account, if you will, of the various issues that were not included in the final version. There aren't many cases in the United States of America that have had this track record that have proceeded this far. And what the Secretary does is what the Secretary does at that stage. Would you agree there's nothing in ARA that would contemplate altering the fact? What the provision says is the Secretary is to consult with the tribe and devise procedures that are consistent with the compact, with the provisions of AGRA, and with the relevant provisions of the laws of the state. That's what the provision says. Okay. But then what the state could aim at may be the laws of the state. That's all simplification. All new laws. Nothing like that. We're one step away. Okay. Let me ask you this about Wind River. My so-called argument is that Wind River applies. The fact that if there is no indication prior to the expiration of a six-year period, as a consequence of taking the land in trust, perhaps the section on the case would be suspended under the Wind River principle. But I want to ask you whether Wind River applies. In Wind River itself, what was at issue was federal zone land for which the classification was changed by regulation. The ownership remained in the United States, has been and continues to be. Here, the ownership status of the land has been changed. Does Wind River apply? The general six-year statute of limitations set forth in Wind River, not the exception that allows it when it's applied to an individual actor. Right. That does not apply. And your basis for saying that? Because it was an adjudicatory decision made in 1994, and as a result of that adjudicatory decision, the interests of the state were affected, as they acknowledged in all the papers they filed in the IBA proceeding a few years later. When you say it is an adjudicatory decision, what do you mean by that? What is the nature of the proceeding that results in the land being taken in trust? The acting director decided to accept the deed into trust, and once that happened, then the taxation, the regulatory issues, all that, those things were delineated so that they were now in sovereign U.S. and Indian control and not in the states. But the individual decision is an adjudicatory decision? It's the acting director's decision. It doesn't sound like an adjudication to me. Before I turn it over to Mr. Hirsch, there's a whole range of ways that this court could decide this case. You could create lots of different rules. And we are one step away. We've been trying to get a gaming compact for a very, very, very long time. And there are some narrow ways this court could decide this case, which I just wanted to let you know. You really believe that, are you telling us that once you get what you'd like to have, that there are no environmental issues that you're going to have to confront? We have some voluntary plans for environmental work, but I'm sure that will be addressed in the next step when the court considers that—or when the Secretary of the Interior considers that final step. So the Secretary of the Interior makes the decision on environmental issues? They proscribe the procedures for Class III gaming in accord with the compact, the provisions of IGRA, and relevant provisions of state law. When you have that provision that brings in state law, what are you going to do about that? Well, that's where I think—if the state has anything, that's where they have it. What? The provision, the Secretary of the Interior, if she imposed environmental regulations that are not contained in the compact, as proved by the mediator, on the basis that it's outside— or so acting to be outside the scope of what was negotiated. I have just acknowledged that the state, I think, could do that. And if they can, I think we can. Okay. You'll have to get a lawyer. If we—so it's a great profession. Two ways the court can rule narrowly. Listen to all of this. Two ways— We just went to a law school. What are those two ways? Two ways the court could rule very, very narrowly. In your favor. In our favor and affirmative. One is, regardless of whether IGRA can be used this way as a collateral attack, et cetera, which we don't think it can be, the IGRA negotiations that are set forth in the record here, the October exchange of letters, it's very clear the state of California never negotiated with this basis, on this basis during the compact negotiations. This arose only after the fact. In fact, her CRE was decided four months after this lawsuit was filed and compact negotiations were closed. So the district judge quite rightly rejected that argument and quite rightly rejected the state's argument and said, in IGRA you look at how the parties negotiated. That's what good faith is. This was never a part of negotiations. It is a post hoc rationalization, not in the review of compact negotiations. I can affirm on that basis alone. The other one is that there are two parcels here. I think the panel majority absolutely got it wrong. If the court looks at the two competing compact proposals, one a letter dated October 6, 2008 from Big Lagoon's lawyers and the response from the governor October 31, 2008, the word 11 parcels doesn't appear anywhere. In fact, the site that Big Lagoon proposes is the reservation in Humboldt County. That includes both the 9 and the 11. It is absolutely undisputed on this record that we have a right to game on the 9. So it was bad faith negotiations, and the district court was quite right to say the status of the 11, even had it been properly challenged, which it never was. The acres are where the eight houses are. Yeah, eight houses. Eight homes. Correct. And how many acres are there? Nine. The parcel has nine, and then the newly acquired one had 11. More recently acquired one had 11. And where's the newly acquired? You know, it's hard to figure this out. They are contiguous to each other. They're contiguous. Yes. Where are they? Are they to the west? No, they would be to the east. What? To the east. To the east. Of the lagoon. If we should get another liberation through the applicability of Carcier, do you have anything to say on that point, the applicability? Well, Carcier basically established that the way to challenge the land as a trust transaction is through an administrative procedure act. No, no. I'm not talking about the procedure. I'm talking about the substance. Let's say we apply Carcier to this situation. Is there any doubt that the tribe would not qualify? Yes. Yes, I think there is a doubt. It's not in the record because we never thought it was a material issue, but there would be an issue. One of the reasons Carcier looked at only one of the three prongs of the definition of Indian. Indian is not a defined term in IGRA. In fact, one way the government can take land into trust is for Indians who are of more than half blood, and the state never even attempted to challenge that prong here. If it's an affirmative defense or if it's some compulsory counterclaim, they had to knock out all three elements, and they never made any attempt to do so. That's why the interior has such a hard job here. Okay. We'll hear from the governor. May it please the court. Sam Hirsch for the United States, Amicus Curiae in support of the Lagoon Rancheria. With me at the council table is Kate Bowers from the Department of Justice. The Big Lagoon Rancheria has been on every federal registered list of federally recognized Indian tribes since we started those lists. It has a trust deed for the 11th. What was the initial list? 1979. But the recognition far predates that. There's also a 1994 trust deed. Well, okay. You say it far predates that. Give us a date. What are you relying upon in terms of the record? It's not clear from the record, but it can't be any later than 1968 when, in January of 68, the Interior Department approved an asset distribution plan under the California Rancherias Act. It could only do that if it recognized the Big Lagoon Rancheria as a federally recognized Indian tribe. In fact, it could be many decades earlier. There are congressional record references to the Big Lagoon Indians stretching back at least to 1904. Does the Department of the Interior remove tribes from time to time from the equivalent? It has the ability to do so. I think it's extraordinarily rare. Okay. Is there any way for anyone else to challenge the recognition of a tribe or the award of a parcel of land in trust to a proper tribe? So, one, what happens if we have an improper tribe? Two, what happens if we have a proper tribe but an improper receipt of land? The only vehicle for challenging either one, because of our sovereign immunity, is an APA challenge brought within six years of the final agency action. Final agency action is what? Either recognizing the tribe, if that's the issue, or deciding to take land into trust. So that's over and done. Both of those are over and done. Long ago. There is no vehicle for challenging this. That is correct. The only vehicle at this point. The Secretary could revisit an agency decision, as is the norm for any administrative actor. I would say that there is one recourse here, which is always the backup in Indian Affairs, and that is going to Congress. Congress certainly could override either the recognition of a tribe or a trust acquisition. Yes. No, because allowing that would effectively destroy the statute of limitations and vastly broaden the waiver of sovereign immunity that Congress enacted. How do you prevent it? A denial is an agency action. I mean, the outcome might be a foregone conclusion, but I don't see how your answer to Judge Breyer's question can be anything other than, of course, it's an agency action. Denial? You can bring in a lawsuit, right? It may not be a winning lawsuit. At a minimum, it would be a borderline frivolous APA claim, if you tried to bring it in that form. Otherwise, you could reopen it. And the maximum would be what? I don't know, Your Honor. Are you assuming that the contact wrote to the Secretary and the Secretary asked for approval of it? If that's the case, could they raise all of these issues? Not successfully, unless there was some actual reevaluation by the agency of the propriety of the 1994 trust acquisition or the pre-1979 recognition of the tribe. And given that this tribe has been on the list every year and that this tribe has a trust key for the 11-acre parcel, it's very unlikely that the Secretary's position would look behind that because that just, again, opens the door for these collateral attacks on property and sovereign issues that need to remain at rest. I'm sorry. Go ahead. Going back to the Chief Judge's original concern, what would the date be that you would rely on for the trigger extension in this case? June 29, 1994. And let me say that during the six years following that and even in the period preceding that, the State was very much on notice. Let me ask a little bit of a Wind River question. You're responding as if the Wind River exception applies. You're responding by saying that, of course, they knew it there before and they don't need that exception. My question is to you the same I asked it. If this is not a regulatory change with respect to land use and continuous enrollment by the federal government, but rather a change in funding statements, does the exception to the Wind River apply? The Wind River exception, which allows you to push back the limitations period, does not apply here because the whole purpose of that exception is to give an opportunity for a party that had no knowledge and no reason to have knowledge that it was being injured by the agency action to nonetheless seek relief under the APA. Here, the State not only had reason to know that the land acquisition was going forward and could be used for gaming, for that matter, but, in fact, it did know. But you did not answer my question. You're saying the Wind River exception does apply, but it doesn't apply on the facts. I'm asking whether it applies on the evidence. That is to say, do we even need to show when the agency action is taking the land in trust and taking the earnings statements, do you need to show knowledge? Your Honor, you're correct that my main response dealt with the facts here. But I also believe that the purpose of the Wind River doctrine is primarily when you have something like a rule of regulation, doesn't have to be, but a rule of regulation of general applicability and continuing application, as opposed to a single event here like on June 29th, when there was an informal, essentially a judicatory order towards the piece of property. My understanding of the position is the exception doesn't apply because it's not a generic, continuous rule. But even if it did apply, it would not help the State because they were well aware of the problem. Does that compare somewhat to your argument? Yes, Your Honor, and I'd like to be specific on that last point. In the record, and this can be found in the request for additional notice from the tribe, in September of 1993, nine months before the trust acquisition, the tribe wrote to the Governor and said, we want to commence negotiations over gaming on our tribal lands. And the State had also been informed that the tribe had purchased property and was seeking to get it into trust. So the State knew full well, even before the decision was made, that there was this trust acquisition underway, yet they never made any objections to the Interior Department whatsoever. There was actually a February 1994 publication in the local newspaper, the Eureka Times Standard, saying this land will be taken into trust, but if you have any objections, speak up in the next 30 days. No one objected, including the State. So the knowledge was there. Furthermore, during the six-year period, a lawsuit just like this one was brought, and I don't know how that could not provide the same kind of trigger that this one supposedly does. Your Honor, I would also like to... Let me ask you this question. This is one of the items I'm interested in. Now, are you saying, or have you said, that the Secretary decides all these environmental issues involving this property? No, it's not the Secretary, but the process itself has, in our view, largely taken care of this, and let me explain how. First, the compact that the mediator has chosen, because, after all, this is a baseball arbitration where the State was pushing very hard on environmental issues. The compact they chose, which is one the tribe proposed, had actually extensive environmental protections in it. It requires an environmental impact report, the creation of measures to mitigate environmental damage, public comment on those mitigation measures, and even a negotiation process for working with the State in the future to protect the environment further. Furthermore, all of the standards of federal environmental law that apply in Indian Country, Clean Air Act, Clean Water Act, Endangered Species Act, so on and so forth, would apply to this tribe no less. And finally, the mediator was aware of that because he's required in selecting the tribe's compact proposal over the State's compact proposal to consider all applicable federal law, and he could very well have taken into account that that's going to be federal environmental standards. None of that would come up in an independent lawsuit brought by some third party. I think that's correct. But if this Court affirms the judgment below and the say is listed below, the next step is to send this compact that the mediator has chosen with plenty of environmental protections built into it to the Secretary for final consideration. Lastly, I would like to address this notion that the tribe may very well have not been under federal jurisdiction in 1934. At pages 495 and 500 of the excerpts of the record, there is an indication that the ancestors of the current members were on an official interior roll of California Indians. Furthermore, at page 265, there is a statement that Lagoon Charlie's family not only occupied the Rancheria when the government bought it in 1918, but, quote, continued to occupy the Rancheria until 1945. So the notion in the State's briefs and in the panel majority opinion that the land was vacant in the 1930s may very well be wrong. It's certainly contradicted by the evidence in the record. What relation does he have to the current plaintiffs? It's through marriage. It's for blood. It's not for blood. But direct dissent from member to member to member is not a requirement for understanding a tribe to be the same tribe. The IRA itself defines tribes as any Indians residing on the same reservation. And over time – Well, time is obviously beyond the scope of anything we could decide here. But how and under what – who would decide this kind of question? Is this something that would have to be presented to the Secretary first? Absolutely. And then we would review that in the appropriate kind of proceeding with due deference, right? If there were one, yes. Okay. Thank you. You're out of time. You're out of time, too, but we'll give you a couple minutes for a bottle. I know you were desperate for a bottle, and I know you want to answer my two questions that are pending, so. Don't spend all your time, only two minutes on that. All right. Your Honor, your first question about whether we raise the issue of a cross-complaint is found at PR 080 lines 19 to 24. We raise the fact that we may need a discovery to – for the purposes of bringing a third-party complaint. I'm sorry, what were the ones again? At the very bottom, it's – I'm sorry, it's the heading. The state may need to file a third-party complaint against the United States. Okay. Thank you. All right. One point I want to address from Bickleton's counsel, talking about the nine acres and the 11 acres, the compact they concede is a compact to put class-three gaming on the entire ranch area. That means both the 11 and the 9. If the compact authorizes gaming on the 11 acres by virtue of that provision and the 11 acres is not eligible, then the compact would be invalid, and that's our point. On the question of the United States Secretary of the Interior's obligation to consider a petition regarding the status of the tribe, Public Law 103-454, Section 103.7 requires that the Secretary of the Interior assure that the list of federally recognized tribes is accurate. We, therefore, could bring in an action challenging the accuracy of the list, presenting the Secretary of the Interior information as to why Bickleton Ranch Area should not be on the list. Challenging the list as to whether it is accurate is different from challenging the accuracy of the decision that previously had been made to put a tribe on the list. So you should be challenging the list to say, hey, it was left off by a tribe, and they left it as a discriminator's error. That's different from saying you erroneously put this tribe on the list. You're saying this is a challenge to the license. It's a substantive challenge as opposed to the challenge which is that you didn't maintain an accurate list and you actually left somebody off the list. Well, I assume when Congress enacted this law, it included not only discriminator errors, but it included basic fundamental errors, and that just may be a question of the interpretation. My point is that this is another avenue for an APA challenge to the Secretary. Do you know if that avenue has ever been used to have a tribe removed from the list? I'm not personally aware of it. I do know the List Act makes very clear that there are three ways, in which the agency does not have the authority to remove a tribe from the list, and Big Lagoon does not fit any of those three. There was no congressional act recognizing them. They did not follow the Part 83 process, and there's been no judicial decision recognizing them. So in our view, the Secretary of the Interior has the ability to remove a tribe under those circumstances if they weren't properly placed on the list. In this case, we have a situation in which the Secretary adopted Part 83 procedures for recognizing tribes in September of 1978, and then put Big Lagoon on the list of federally recognized tribes in February of 1979 without complying with the Part 83 process. No explanation for that at all. So our point is that there's a valid challenge. And again, with respect to the nine acres, even if the nine acres is not in trust, the nine acres is owned by the United States for homeless Indians, and they're allowing the Big Lagoon Rancheria to exercise jurisdiction over it. Have you thought about, and the folks on the other side, about submitting this matter to arbitration? We haven't, Your Honor, at this point. There's always a possibility. Would you have any objections to that? I don't happen to address that question to my client. At this point, I don't know. Well, we've had great success in our process, and we have judges who are senior judges who are very good at this process. It seems to me that somewhere along the line, we're going to have to work out an accommodation. Just to make it clear, I think Judge Ferguson is referring not to arbitration, to rebinding, but to mediation. I mean, excuse me, mediation. I'm sure that's what Judge Ferguson meant. Okay, I understood. That's what I meant. Thank you. If that was a possibility, I'm sure we would take that to our client. Well, you've got everybody here, and courthouse steps are always conducive to, why don't you all go to lunch and chat about it, and perhaps we have an excellent mediation unit here. In fact, it's a celebrated mediation unit, and I'm sure we'd be willing to intermediate. I joined Judge Ferguson in suggesting that a mediation process for a mediation unit, or one of our senior judges who specializes in mediation, might well calm the waters here. Think about it. Perhaps when we are off the bench, you and your worthy opponents can talk, and if you have an interest in having us delay a decision in this case to allow possible mediation, just let us know within the next 24 hours. We'll find something, and we will most likely agree. Thank you. I know we have one of our senior judges who spends practically all his time mediating the most complex matters that are imaginable, very successful in bringing parties together. Including capital cases, so to speak. If that can be mediated, anything can. In any event, we are out of time, and we thank counsel for a useful argument when we are adjourned. Meditate on mediation. All rise. Judge Ferguson has been adjourned.
judges: KOZINSKI, PREGERSON, REINHARDT, O'SCANNLAIN, GRABER, FLETCHER, PAEZ, BYBEE, SMITH, CHRISTEN, NGUYEN